**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2727-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMES B. DICKERSON, a/k/a
JUILAN DICKERSON, and
JULIAN DICKERSON,

     Defendant-Appellant.

_____

Submitted December 19, 2023 – Decided January 4, 2024

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-08-2546.

Neil Law, attorney for appellant (Durann A. Neil, Jr., on the brief).

Grace C. Mac Aulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant James B. Dickerson appeals from an April 6, 2022 Law Division order denying his petition for post-conviction relief ("PCR") without an evidentiary hearing. We affirm.

Pursuant to a negotiated plea agreement, defendant pled guilty to four counts of first-degree attempted murder, N.J.S.A. 2C:5-1; N.J.S.A. 2C:11-3(a)(1). He later moved to withdraw his guilty plea pursuant to State v. Slater, 198 N.J. 145 (2009). After the court denied his application, defendant was sentenced consistent with the plea agreement to concurrent twenty-year terms, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43–7.2, with all remaining charges in the multi-count indictment dismissed.

On direct appeal, defendant challenged the court's denial of his motion to withdraw his guilty plea and his sentence, which we considered on our excessive sentencing calendar. We rejected defendant's contentions and affirmed. State v. Dickerson, No. A-3479-16 (App. Div. Sept. 20, 2017).

Defendant then filed his petition for PCR. He argued his trial counsel rendered ineffective assistance by failing to: (1) file a motion for a change of venue; (2) investigate and assert an affirmative defense based upon defendant's

alleged intoxication; and (3) present appropriate mitigating factors at the time of sentencing.[1]

In a thorough written opinion, Judge Gwendolyn Blue considered each of these contentions and denied defendant's petition after concluding defendant failed to satisfy the two-prong test of Strickland v. Washington, 466 U.S. 668, 687 (1984).[2]  Taking defendant's contentions in turn, the judge first found defendant had failed to meet his burden with regard to venue as he did not "show he would have prevailed on his application under the current law" but "simply ma[de] a blanket statement that he would not have pled [guilty] had counsel filed a motion to change venue."  Further, Judge Blue noted defendant pled guilty

---

[1]  Before us, defendant has not reprised his arguments raised before the PCR court regarding his counsel's alleged ineffective assistance during sentencing and we accordingly deem those unbriefed arguments waived.  We also do not discuss the court's reasons for rejecting defendant's claims on that issue.  See Green Knight Capital, LLC v. Calderon, 469 N.J. Super. 390, 396 (App. Div. 2021) (deeming an issue not raised or briefed on appeal waived); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2023) ("[A]n issue not briefed is deemed waived.").

[2]  To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in Strickland, 466 U.S. at 687, by demonstrating that:  1) counsel's performance was deficient, and 2) the deficient performance actually prejudiced the accused's defense.  The Strickland test has been adopted for application under our State constitution.  See State v. Fritz, 105 N.J. 42, 58 (1987).

nearly two years after the date of the incident, allowing "[a]ny concerns of publicity" to subside.

The judge next rejected defendant's contention that he was prejudiced by counsel's failure to investigate or present an intoxication defense. Judge Blue noted defendant submitted medical records from the date of offense, April 25, 2014, and treatment records related to a prior injury in October 2012. The judge's review of the records revealed "nothing . . . that suggests the defendant was under the influence of drugs at the time of the incident."

Specifically, the "detailed records" from the date of offense contained "no notes . . . that indicate the [d]efendant appeared to be under the influence of any substance" or any "reported use of [d]efendant consuming any controlled dangerous substances." Although the historical records demonstrated defendant had been prescribed Percocet, the judge found "no information that supports the argument of an intoxication defense." Additionally, Judge Blue found defendant submitted no affidavit to explain "the substances he took the day of the incident" or "the amount of drugs or alcohol he consumed."

Further, the judge found "nothing presented to this [c]ourt that shows the defendant's [t]rial [c]ounsel's assistance was not within the range of competence demanded of attorneys in criminal cases or that an investigation was not pursued

or discussed by" counsel. Judge Blue noted defendant confirmed during his plea allocution he was satisfied with his counsel's representation and "the investigation that was conducted in this matter" and admitted he had the requisite intent necessary for the charges to which he pled guilty. On the latter point, the judge cited the following colloquy between defendant and his counsel at the plea hearing:

> Plea Counsel: You understand and did discuss with me that any crime that is purposeful means it has to be your conscious object or design to do just what you are attempting to do. Do you understand that?
>
> Defendant: Yes.
>
> Plea Counsel: Was it your intent to kill Officer Benjamin Patti?
>
> Defendant: Yes.
>
> . . .
>
> Plea Counsel: Was it your conscious object or design to kill Officer Allen Williams that day?
>
> Defendant: Yes.
>
> . . .
>
> Plea Counsel: Was it your conscious object or design to kill [Officer Michael Feeney]?
>
> Defendant: Yes.

Plea Counsel: In other words, you were trying to kill all of these officers by shooting at them?

Defendant: Yes.

This exchange reflected, according to the judge, that defendant's counsel had discussed with defendant "the issue of state of mind, which would include the question of intoxication." Additionally, Judge Blue found "no evidence that plea counsel did not obtain [d]efendant's medical records" but even so, the records showed "no evidence of intoxication."

Finally, the judge determined that because defendant failed to present a prima facie case of ineffective assistance of counsel, a plenary hearing was not required under State v. Preciose, 129 N.J. 451, 462 (1992). This appeal followed.

On appeal, defendant raises the following contentions:

I. PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO COUNSEL'S FAILURE [TO] PURSUE AFFIRMATIVE DEFENSES.

II. PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO COUNSEL'S FAILURE TO CONDUCT CERTAIN PRETRIAL MOTIONS.

6

In his first point, defendant argues Judge Blue erred in finding counsel's performance was not deficient based on the lack of evidence of intoxication in the record. Specifically, he notes counsel stated defendant was "under the influence of MDMA [methylenedioxymethamphetamine] and other drugs during the incident" at least twice, at the <u>Slater</u> and sentencing hearings. Defendant also contends his medical records, which were available to counsel, "clearly outlined that he had prescriptions for Oxycodone for his [c]olostomy bag" and he "had to have an emergency blood transfusion due to the gunshot wound he received to his leg," consistent with MDMA-induced blood clotting problems. Defendant concludes counsel's failure to obtain medical records and conduct further investigation prejudiced his defense, as "his sentence would have been drastically reduced from first degree to second degree range."

In his second contention, defendant maintains the court erred in finding his counsel was not deficient for failing to move for a change of venue. He argues such motion was "directly related" to his "being forced to take the plea" because "the jury pool would have undoubtedly been tainted [by] individuals associated with the Camden Police Department" and "local publicity of [defendant's] case because the alleged victims were law enforcement officers."

A-2727-21

The judge applied the incorrect legal standard, defendant contends, because "it is not . . . whether the [c]ourt believes a motion to change venue was viable but whether prior counsel's failure to pursue the motion prejudiced the defendant." He concludes counsel's failure to pursue a change of venue "was a contributing factor that made [him] feel as if he had no viable option but to accept the State's weighted plea offer to the first[-]degree charges." We reject all of these arguments and affirm for the reasons expressed in Judge Blue's comprehensive and well-reasoned written opinion. We add the following comments to amplify our decision.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. Where, as here, the PCR court does not conduct an evidentiary hearing, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. A defendant's right to an evidentiary hearing is not automatic, see Preciose, 129 N.J. at 462, but courts should conduct a hearing when "the defendant has presented a prima facie claim of ineffective assistance of counsel under the Strickland two-pronged test, material issues of disputed fact lie outside the record, resolution of the issues necessitate a hearing . . . and 'when the

attorney's testimony may be required.'" State v. L.G.-M., 462 N.J. Super. 357, 364-65 (App. Div. 2020) (quoting Preciose, 129 N.J. at 462).

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013); Preciose, 129 N.J. at 459. To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Pennington, 418 N.J. Super. 548, 553 (App. Div. 2011) (quoting State v. Mitchell, 126 N.J. 565, 579 (1992)).

As noted, to establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced their right to a fair trial. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "[C]ounsel cannot be deemed ineffective for failing to raise arguments that are ultimately deemed without merit." State v. Roper, 362 N.J. Super. 248, 252 (App. Div. 2003) (citing State v. Worlock, 117 N.J. 596, 625 (1990)). There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

With respect to defendant's claim his counsel neglected to investigate or present an intoxication defense, we agree with Judge Blue defendant failed to establish either of Strickland's performance or prejudice prongs on that issue, because he did not present competent evidence to show such a defense had merit. Under N.J.S.A. 2C:2-8, "self-induced intoxication can be a defense to a purposeful or knowing crime" to disprove the requisite mental state. State v. R.T., 205 N.J. 493, 507-08 (2011). "The ultimate question for the judge is whether the evidence would permit a jury to conclude 'that defendant's "faculties" were so "prostrated" that he or she was incapable of forming an intent to commit the crime.'" Id. at 508 (quoting State v. Mauricio, 117 N.J. 402, 418-19 (1990)). Factors the court may consider in making this determination

include: (1) the quantity of intoxicant consumed, (2) the period of time involved, (3) the defendant's conduct as perceived by others, (4) any odor of alcohol or other intoxicants, (5) the results of chemical testing, and (6) the defendant's ability to recall relevant events. Ibid.; Mauricio, 117 N.J. at 419.

A review of the April 25, 2014 medical records reveals nothing demonstrating "defendant's 'faculties' were so 'prostrated' that he . . . was incapable of forming an intent to commit the crime." R.T., 205 N.J. at 508 (quoting Mauricio, 117 N.J. at 418-19). In the section titled "Substance Use Topics," the records reflect defendant stated he was a "current every day smoker," had never used smokeless tobacco, and drank alcohol twice per week. The section titled "Physical Exam" states defendant's "general appearance" was "awake/appropriate." Under the "ROS" or Review of Systems section, the records show no notable findings for the cardiovascular, neurologic, respiratory, or psychiatric systems, indicating defendant did not display physiological or psychological signs of intoxication. That defendant received a blood transfusion following a gunshot wound is not sufficient, in itself, to establish that defendant was intoxicated at all, much less met the requisite level of intoxication.

Defendant also submitted historical medical records detailing his past medical treatment including a colostomy and a Percocet prescription. Like the

11

other records, however, we are not convinced this sufficiently establishes defendant's intoxication on the date of offense such that his counsel was ineffective for failing to pursue such a defense. Being prescribed a medication does not necessarily mean defendant used the medication on the day in question, or that he used it to the extent required to be unable to form the requisite mens rea for the crimes to which he pled guilty. Additionally, neither set of records supports in any way defendant's claim he was under the influence of MDMA.

Defendant presented no other credible and competent evidence to support his intoxication claim. As the court noted, he did not explain which substances he consumed or in what amounts, when he consumed the substances, or the results of any chemical testing. As the evidence simply did not support an intoxication defense, counsel was not ineffective for failing to pursue it.

We similarly agree with Judge Blue's conclusion defendant failed to demonstrate his counsel's representation was constitutionally ineffective by failing to move for a change of venue. Rule 3:14-2 requires a trial court to grant a motion for a change of venue or foreign jury if it "finds that a fair and impartial trial cannot otherwise be had." The court "must consider whether the change . . . is 'necessary to overcome the realistic likelihood of prejudice from pretrial publicity.'" State v. Nelson, 173 N.J. 417, 475 (2002) (quoting State v.

Williams, 93 N.J. 39, 67 n.13 (1983)). It must also recognize the distinction "between cases in which the trial atmosphere is so corrupted by publicity that prejudice may be presumed, and cases in which pretrial publicity, while extensive, is less intrusive, making the determinative issue the actual effect of the publicity on the impartiality of the jury panel." Ibid. (quoting State v. Biegenwald, 106 N.J. 13, 33 (1987)).

"Cases in which prejudice due to pretrial publicity may be presumed are relatively rare and arise out of the most extreme circumstances." State v. Koedatich, 112 N.J. 225, 269 (1988). Our Supreme Court has set forth a non-exhaustive list of factors for use in determining the existence of presumed prejudice:

> (1) evidence of extreme community hostility against defendant;
>
> (2) prominence of either the victim or defendant within the community;
>
> (3) the nature and extent of news coverage;
>
> (4) the size of the community;
>
> (5) the nature and gravity of the offense; and
>
> (6) the temporal proximity of the news coverage to the trial.
>
> [Nelson, 173 N.J. at 476.]

13

Defendant offers no evidence to support his assertion the pretrial publicity was so extensive as to cause presumed prejudice. He points to nothing showing the victims were prominent community members or that the nature and extent of news coverage supported a change in venue under Nelson. That the victims were police officers does not, standing alone, establish prejudice. Cf. Nelson, 173 N.J. at 477-78 (finding no actual or presumed prejudice justifying change of venue when defendant charged with murder of two police officers). Additionally, defendant presented no evidence of any media coverage at all. Nothing in the record supports a finding that any pretrial publicity created an "atmosphere . . . so corrupted by publicity that prejudice may be presumed." Id. at 475. Because a motion for change of venue would have been without merit, defendant's counsel was not ineffective for failing to so move.

To the extent we have not specifically addressed any of defendant's legal arguments it is because we have concluded they are of insufficient merit to warrant discussion in a written opinion. R. 2:11–3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2727-21